CASE 28—PETITION EQUITY—JUNE 26.

# Webb vs. Wright, &c.

APPEAL FROM MADISON CIRCUIT COURT.

The court, having jurisdiction of the person and cause of action, the proceedings *in rem* attached as an incidental remedy, and the Madison circuit court had jurisdiction to sell the mills and lands in controversy, though situated in the county of Estill.

S. TURNER,                                    For Appellant.

CAPERTON,                                    For Appellee.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

The evidence strongly conduces to establish that Potts and Wright were partners in the mill business, and owed Boggs as a firm; that Wright sold his one fourth interest to Creed, who undertook, for Wright, to pay all the firm debts, including Boggs'; that Creed afterwards sold said fourth interest to Webb and Blevins, who undertook, in like manner, to pay all the firm debts, including the one due Boggs; that they also purchased of Potts another fourth interest, thus becoming owners of one half, and entered into a written covenant with him, dated October 27, 1859, to which Wright is a subscribing witness, in which they covenant "to meet all claims standing against the firms of Potts & Wright and Potts & Creed, so far as their interest of one half is concerned;" and Wright surrendered to Creed his covenant. May 30, 1860, Webb, having purchased out both Potts and Blevins, entered into a written obligation with Potts,

to which Blevins is a subscribing witness, in which it is set out that Webb, in consideration of five thousand dollars paid and to be paid, as therein named, becomes the sole owner of the mill and lands, and Potts to retain the lumber, logs, and dues of Potts, Blevins & Co., and is to pay their debts.

But Potts seems not to have paid this Boggs debt thus assumed by all the subsequent partners and partnerships, and it is averred that Potts has become insolvent.

Wright, as a principal, and Williams and Broadus, as sureties in the Boggs debt, brought this suit against Webb to compel him to discharge the Boggs debt, in which all those interested are made parties, and summons is served on Webb in Madison county, where the suit was brought. The court, at its March term, 1866, ordered *nisi*, Webb, to pay the Boggs debt, nine hundred and forty-two dollars and twenty-eight cents, with interest from January 17, 1862, by the first day of its next June term; and, upon failure, it would make such further judgments as might be equitable.

At the June term, Webb having failed to pay Boggs, the court ordered that the mill and lands be sold to raise the amount of the Boggs debt and costs of suit.

It is evident that each succeeding partner took the place of the outgoing partner in the assets and liabilities, and that each knew of and recognized this Boggs debt as an existing liability.

If Webb, in view of these facts, permitted Potts to improperly convert the assets, and did not see to the discharge of this debt, there is nothing inequitable in holding the mill property responsible for its discharge; and, as Boggs is a party to the suit, the court should see that the proceeds of the mill and lands are appropriated to its discharge.

The court having jurisdiction of the person and cause of action, the proceedings *in rem* attached as an incidental remedy, and it had jurisdiction to sell the mills and lands though situated in Estill county.

Wherefore, the judgments, at both the March and June terms, 1866, are affirmed.